UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EDWARD JOHN LOREN,

            Plaintiff,

v.

SUZANNE GROFF, BRANDI AVERY,
and MICHAEL TRAVIS,

            Defendants.

_____/

Case No. 1:24-cv-592

Hon. Ray Kent

**OPINION AND ORDER**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Edward John Loren, a prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff injured his ankle at the MDOC's Lakeland Correctional Facility (LCF). Compl. (ECF No. 1). Plaintiff sued NP Suzanne Groff, RN Michael Travis, and RN Brandi Avery for violating his constitutional rights with respect to medical treatment. *Id*. at PageID.3. This matter is now before the Court on NP Groff's motion for summary judgment based solely on the failure to exhaust administrative remedies (ECF No. 41).

    **I.**      **Plaintiff's complaint**

Plaintiff set forth the following allegations. Plaintiff is assigned to the "Dog Training Program" at LCF "which requires him to work daily while training his assigned dog." Compl. at PageID.4. On December 20, 2023, while walking his dog, plaintiff stepped into a hole and heard his left ankle snap. *Id*. at PageID.5. Defendants "completely ignored the potential broken bone in his left ankle." *Id*. at PageID.6. On the date of the injury, RN Avery gave plaintiff

1

crutches, an ice pack, ibuprofen and an ace bandage, but did not check to see if he had a broken bone in his ankle. *Id*. at PageID.5.

On December 27, 2023, RN Travis noted the swelling and tenderness in plaintiff's left ankle, and provided a treatment plan of a three day lay-in and three days of Motrin. *Id*. Travis falsified medical records because he entered "a false statement that Plaintiff agreed to this plan of treatment." *Id*.

Plaintiff's left ankle continued to swell with severe pain. *Id*. On December 29, 2023, NP Groff noted the swelling and a decrease in plaintiff's mobility due to the swelling and pain. *Id*. Groff ordered x-rays, medication (Ibuprofen 400 mg), and "radiology" for January 3, 2024. *Id*. Groff falsified medical records because she "provided a false statement that Plaintiff was in agreement with this plan of care." *Id*.

On January 4, 2024, plaintiff's left ankle was x-rayed as ordered by NP Groff. *Id*. Dustin Johnson, M.D. reviewed the x-ray and found "that there was no sign of acute osseous fracture, and no radiographic evidence of acute fracture" on that date. *Id*.

On January 12, 2024 and January 19, 2024, plaintiff sent medical kites to healthcare due to "continued pain, swelling, and discoloration of his left ankle". *Id*. "He did not receive any medical treatment after waiting over a week in severe pain and suffering". *Id*.

"Plaintiff submitted his grievance against health care on January 28, 2024 after waiting over two weeks for medical treatment for his swollen ankle." *Id*. The grievance was denied on February 13, 2024 noting that "the MRI ordered by the medical provider was scheduled." *Id*. Plaintiff did not receive any treatment until March 13, 2024, when Patrick Albus, M.D. "did an x-ray [MRI] of the left ankle and noted there was a Chronic fracture of the navicular".

*Id*. at PageID.6.  This information was placed in plaintiff's medical records in the LCF health care department.  *Id*.

In Count One, plaintiff claims that RN Avery violated his Eighth Amendment rights by forcing plaintiff to remain in severe pain without ascertaining whether he had broken bone and sending plaintiff back to his housing unit in a deliberate act to keep  him in severe pain.  *Id*. at PageID.7-8.

In Count Two, plaintiff claims that RN Travis violated his Eighth Amendment rights by acting with deliberate indifference when Travis ignored the possibility of a broken bone, "did nothing to combat the pain", delayed x-rays, and falsified medical records "to indicate that Plaintiff was in agreement with his nonexistent plan of treatment." *Id*. at PageID.8.

In Count Three, plaintiff claims that NP Groff acted with deliberate indifference to his Eighth Amendment rights when Groff knew of the broken bone, "failed to do anything to properly treat the broken bone by authorizing a cast put on the ankle for proper healing", and "forced Plaintiff to remain in a state of pain and suffering for over (5) months as his medical provider." *Id*.

In Count Four, plaintiff claims that defendants "collectively" violated the Eighth and Fourteenth Amendments when they denied him "fundamental due process of law, equal protection of the law, and a right to be free of cruel and unusual punishment" when they forced him to remain in a continued state of pain and suffering for over five months by failing to provide adequate treatment for a broken bone, delaying treatment, and falsifying information in his medical records "to suggest he agreed with the non existent plan of care for his broken bone." *Id*. at PageID.8-9.

Plaintiff seeks compensatory damages, declaratory relief, and injunctive relief. *Id*. at PageID.10.

### II.    Motion for summary judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d  at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Lack of Exhaustion

### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective September 25, 2023).[1] A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at

---

[1] The Court notes that NP Groff cited the March 18, 2019 version of PD 03.02.130 (ECF No. 11-2).

¶ W.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ W, Y, and CC.  The Policy Directive provides the following directions for completing grievance forms:

> The issue should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ Y (emphasis in original).  Within five business days after attempting to resolve a grievable issue with appropriate staff, the prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ CC.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ JJ.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ NN.

### C.    Discussion

Defendant NP Groff identified one grievance relevant to plaintiff's claim, LCF-24-01-0092-12E2 ("92").  *See* Groff Brief (ECF No. 41, PageID.263-268); Grievance 92 (ECF No. 11-1, PageID.75).  This grievance was not directed at any particular individual and involved an incident on January 26, 2024, when plaintiff wanted to be taken to the Emergency Room for "professional help" related to his ankle.  Plaintiff filed the grievance on January 28, 2024.

In his describing his attempt to resolve the grievance, plaintiff stated,

> Sent a Medical Kite on 1-12-24 & 1-19-24 asking to see Medical Provider. As of Friday the 26th still NO call-out to assist me with my urgent medical need.

*Id*.

In the actual grievance, plaintiff stated:

> I am in extreme pain and need urgent care.  On 12-20-23 while working I step in a hole on yard when walking my dog and believe to have snap my tendons in my foot.  Healthcare has only provided ice and x-rays which <u>has</u> <u>not</u> eliminated the pain nor fixed my foot.  I am unable to walk on it.  Its inhumane to make someone suffer like this.  I am requesting to be taken to the Emergency Room for some professional help, I am hurting badly.  Please help!

PageID.75.

"[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued" and that "the grievance is not a summons and complaint that initiates adversarial litigation." *Jones*, 549 U.S. at 219, quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004).  For purposes of exhaustion, an MDOC official, employee or medical provider is not alerted to the problem being grieved unless the prisoner complies with the requirements of PD 03.02.130, which requires the prisoner to list the "[d]ates, times, places and names of all those involved in the issue being grieved."  *See Vandiver v. Martin*, 48 Fed. Appx. 517, 519 (6th Cir. 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance").

Here, plaintiff contends that his grievance was adequate because did not know NP Groff's name, medical staff would not provide him with Groff's name, and the grievance coordinator did not reject the grievance.  In his response, plaintiff stated that he "listed the employment position of the person being grieved" and "used the 'Medical provider' as the person being responsible for the long delay in providing treatment."  Plaintiff's Response (ECF No. 42, PageID.278).

7

The Step I grievance response summarized the grievance as, "Grievant complaint is not seeing a Medical Provider (MP) timely."  PageID.76.  The investigation summary referred to plaintiff's treatment history since injuring his ankle:

> Upon investigation and review of the Electronic Medical Record (EMR), Grievant sustained an injury on 12/20/2023. The Grievant was seen on 12/20/2023 and 12/27/2023, by nursing [sic] staff in the healthcare clinic. He was seen by the MP on 12/29/2023. The MP ordered Tylenol and Motrin for on month and xrays of the left ankle. The xrays were reviewed by the MP and showed no evidence of acute fracture. The Grievant sent a healthcare request on 1/12/2024 stating his ankle still hurts. Grievant was seen on 1/15/2024 and 1/18/2024 and 1/30/2024, by nursing staff in the healthcare clinic. A Chart Review was placed to the MP. The Grievant was seen by the MP on 2/1/2024. The MP ordered a MRI to be completed. A 407 was submitted and approved. The MRI has been scheduled.

*Id*.  The grievance was denied, stating in part that, "Grievant is being evaluated, treated, has had diagnostic testing conducted and is being monitored by the Medical Provider (MP)."

Here, plaintiff did not file the grievance against NP Groff or his "Medical Provider".  Rather, plaintiff identified "Healthcare" as the entity being grieved, with the grievance asking someone at Healthcare to take him to the emergency room for "professional help."  In the grievance response, the MDOC construed the grievance as complaining that "Healthcare" did not schedule plaintiff to see a medical provider in a timely manner and reviewed his medical records regarding his treatment and requests for treatment.  Plaintiff's identification of "Healthcare" as the party grieved is not sufficient to exhaust his claims against NP Groff.  *See Hill v. Buchanan*, No. 21-1673, 2022 WL 16580149, at *3 (6th Cir. Sept. 8, 2022) (finding that Step I references "only to 'health care' and 'medical' in general" fail to exhaust claims against the unnamed and unidentified defendants); *Bonga v. Abdellatif*, No. 18-2074, 2019 WL 4580389 at *3 (6th Cir. Apr.

26, 2019) (rejecting argument that grievant exhausted claims against unnamed healthcare personnel "by mentioning 'medical providers' in his grievances").[2]

In summary, plaintiff did not properly exhaust a grievance against NP Groff regarding the matters at issue in this lawsuit. Plaintiff did not: name NP Groff as the person being grieved; complain that Groff failed to adequately treat him on December 27, 2023; complain that Groff falsified medical records; or complain that Groff failed to treat his injury. Based on this record, plaintiff's grievance did not alert NP Groff of the claims alleged in this lawsuit.

### III.    Conclusion

For the reasons set forth in this opinion,

**IT IS ORDERED** that defendant NP Groff's motion for summary judgment (ECF No. 41) is **GRANTED** and that NP Groff is **DISMISSED** with prejudice.

Dated:  March 16, 2026                                        /s/ Ray Kent
                                                                           RAY KENT
                                                                           United States Magistrate Judge

---

[2] Under certain circumstances, a court has allowed a prisoner to identify a defendant by a title and a description of the defendant's actions rather than by name. *See, e.g., Mattox v. Edelman*, 851 F.3d 583, 597 (6th Cir. 2017) (finding that identifying an "unnamed RMO" (Regional Medical Officer) who denied the grievant medication was sufficient to exhaust claims against that individual, where there were only a few RMOs at the MDOC. That was not case here, where plaintiff grieved "Healthcare".