UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD JOHN LOREN,

Plaintiff,

v.

SUZANNE GROFF et al.,

Defendants.

Case No. 1:24-cv-592

Honorable Ray Kent

# **OPINION**

This is a civil rights action brought by Plaintiff Edward John Loren under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (ECF No. 5.) Under that section, when a plaintiff is proceeding *in forma pauperis*, the court must "dismiss the case *at any time* if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2) (emphasis added).

This matter is also before the Court on a motion for summary judgment filed by Defendant Michael Travis (ECF No. 50) as well as a motion for leave to file a belated renewed motion for summary judgment filed by Defendant Brandi Avery, (ECF No. 53). Defendant Avery's motion for leave to file the summary judgment motion is unnecessary. By order entered March 2, 2026, the Court vacated the deadlines for filing dispositive motions; thus, Defendant Avery's motion, filed on March 3, 2026, was not late. For that reason, the Court will also consider Defendant Avery's motion for summary judgment, (ECF No. 54).

For the reasons set forth below, the Court will dismiss Plaintiff's claims for violations of the Equal Protection Clause, the Due Process Clause, and state law under 28 U.S.C.

§ 1915(e)(2), for failure to state a claim on which relief may be granted. Additionally, the Court will grant the motions for summary judgment filed by Defendant Travis and Defendant Avery. As that will resolve all claims against all parties, the Court will also dismiss this action with prejudice.

## Discussion

### I. Factual and Procedural Background

Plaintiff is incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility in Coldwater, Michigan. He is presently serving a consecutive sentence string with an earliest release date of September 18, 2040, and a discharge date of September 18, 2067. Plaintiff's sentences were imposed following Plaintiff's entry of guilty pleas to one count of armed robbery and felony firearm in Wayne County Circuit Court and one count of armed robbery in Oakland County Circuit Court. *See* MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/search (enter First Name "Edward," Last Name "Loren," select Search, select Offender Number 534745) (last visited Oct. 5, 2026).[1]

In Plaintiff's verified complaint, he alleges that he participates in the dog training program at LCF. (Compl., ECF No. 1, PageID.4.) On December 20, 2023, while walking his assigned dog, he "stepped into a hole in the ground and he heard his left ankle snap." (*Id.*, PageID.4–5.) Plaintiff went to the health care department, where he was seen by Defendant Avery. (*Id.*, PageID.5.) Defendant Avery gave Plaintiff a set of crutches, an ice pack, an Ace bandage, and ibuprofen. (*Id.*) She did not check to see if Plaintiff had a broken bone, and she sent Plaintiff back to his housing unit "in severe pain." (*Id.*)

[1] This Court takes judicial notice of the information provided by a search of the MDOC's OTIS website with regard to Plaintiff. *See, e.g., United States v. Alexander*, 543 F.3d 819, 824 (6th Cir. 2008); *Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249, at *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821–22 n.3 (E.D. Mich. 2004).

Plaintiff saw Defendant Travis on December 27, 2023, and Defendant Travis "noted the swelling and tenderness of touch to Plaintiff's left ankle." (*Id.*) "His plan of care was a (3) day lay-in, and (3) days' worth of Motrin, and a false statement that Plaintiff agreed to this plan of treatment." (*Id.*)

Plaintiff's ankle continued to swell. (*Id.*) He was seen by Defendant Groff on December 29, 2023. (*Id.*) Defendant Groff noted the swelling and that Plaintiff had decreased mobility because of the swelling and pain. (*Id.*) She ordered X-rays, prescribed 400 mg of ibuprofen, and ordered radiology for January 3, 2024. (*Id.*) She also falsely noted that Plaintiff agreed to that plan of care. (*Id.*)

In early January 2024, Plaintiff was provided an x-ray by Dr. Justin Johnson. Dr. Johnson wrote in Plaintiff's medical records that the x-ray revealed "no sign of acute osseous fracture, and no radiographic evidence of acute fracture." (*Id.*)

Plaintiff sent kites to the health care department on January 12 and 19, 2024, "because of the continued pain, swelling, and discoloration of his left ankle." (*Id.*) He did not receive any medical treatment for over a week in response to those kites. (*Id.*) Plaintiff submitted a grievance about the matter on January 28, 2024. (*Id.*) The grievance was denied on February 13, 2024, with a response noting "that the MRI ordered by the medical provider was scheduled." (*Id.*) Plaintiff's Step II and Step III grievance appeals were denied as well. (*Id.*, PageID.5–6.)

On March 13, 2024, Plaintiff was taken to the Hillsdale Hospital, where non-party Dr. Patrick Albus imaged Plaintiff's left ankle. (*Id.*, PageID.6.) Dr. Albus noted that there was a chronic fracture "of the navicular." (*Id.*) That information was relayed to LCF's health care department. (*Id.*)

Plaintiff has also filed a declaration supporting his complaint. (ECF No. 2.) In that declaration, Plaintiff states that on March 18, 2024, he saw Defendant Groff. (*Id.*, PageID.17.) Defendant Groff acknowledged the fracture, requested physical therapy, and directed Plaintiff to continue his stretches. (*Id.*) Defendant Groff noted that "as far as she could tell there were no separation of the bones and it would be fine." (*Id.*)

Plaintiff was evaluated by a physical therapist on March 24, 2024. (*Id.*) The therapist looked at the MRI and "said there was nothing he could do for [Plaintiff], and he could visibly see the bone protruding in [Plaintiff's] foot." (*Id.*) The therapist told Plaintiff he should have seen an orthopedic specialist months ago, and he "put in for the [o]rthopedic [s]urgeon ASAP." (*Id.*)

Plaintiff saw non-party medical provider Scott Weaver on March 25, 2024, who noted Plaintiff's fracture. (*Id.*) Plaintiff saw an orthopedic specialist on May 15, 2024. (*Id.*) The specialist told Plaintiff that he had a chronic fracture that was not healing, and that Plaintiff would need a bone graft to heal properly. (*Id.*) Plaintiff was also told that he has nerve damage and "will have severe issues due to lack of care." (*Id.*)

Plaintiff saw Defendant Groff on May 28, 2024. (*Id.*) Defendant Groff told Plaintiff she would "put in for x-ray over my recent fall on May 27, 2024. (*Id.*) Defendant Groff also told Plaintiff that he had been approved for a neurology appointment. (*Id.*) The request for a kneel cart, however, had been denied. (*Id.*) Plaintiff claims that, to date, he has not had a cast placed on his left ankle, and he has not seen a bone specialist to "place the bones together for healing." (*Id.*)

Based on those allegations, Plaintiff asserts violations of his Eighth Amendment rights, contending that Defendants demonstrated deliberate indifference to his serious medical need by providing inadequate medical care. Plaintiff also claims that Defendants' actions, or

failures to act, violate Plaintiff's Fourteenth Amendment equal protection and due process rights. Finally, Plaintiff is pursuing a claim under a state statute, "MSA 4.202 (e)(g)." (*Id.*, PageID.7, 9.) Plaintiff seeks declaratory and injunctive relief, as well as damages. (*Id.*, PageID.10.)

By opinion and order entered March 16, 2026, the Court granted Defendant Groff's motion for summary judgment on the ground that Plaintiff had failed to exhaust his administrative remedies with respect to his claims against her. (Op. & Order, ECF No. 55.) The summary judgment motions filed by Defendants Travis and Avery parallel the motion filed by Defendant Groff. Although Plaintiff opposed Defendant Groff's summary judgment motion, he has not responded to either of the other defendants' summary judgment motions.

## II. Failure to State a Claim

Upon review of Plaintiff's allegations regarding violation of his rights under the Fourteenth Amendment's Due Process and Equal Protection Clauses and state statutes, even accepting them as true, they fail to state a claim on which relief may be granted.

### A. Standard

A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). While a complaint need not contain detailed factual allegations, a plaintiff's

allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

When evaluating whether a complaint states a claim, the Court must "accept all well-pleaded allegations in the plaintiff's complaint as true and view facts in the light most favorable to the plaintiff, [but the Court] 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (quoting *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The Court is limited in the materials it can properly take into account when deciding whether a complaint states a claim on which relief may be granted:

> As with any Rule 12(b)(6) motion, [courts] begin by accepting as true the complaint's plausible allegations of fact. [*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)]. Then, [courts must] look at the facts "collectively," consulting not just the complaint but also the documents referenced by the complaint and any matter of which we may take judicial notice. *Id*. at 322–23,. Finally, we consider any "plausible opposing inferences." *Id*. at 323.

*Newtyn Partners, LP v. All. Data Sys. Corp.*, 165 F.4th 947, 965 (6th Cir. 2026) (parallel citations omitted).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff contends that his Eighth Amendment rights were violated because Defendants Travis and Avery were deliberately indifferent to his serious medical need. Plaintiff offers the same facts to support his claims under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

**B. Due Process**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). But Plaintiff also contends that he is entitled to protection under the Due Process Clause of the Fourteenth Amendment. The Sixth Circuit Court of Appeals has recognized that, to the extent the right to medical care is a due process right, it is "a substantive due process right . . . ." *Colson v. City of Alcoa, Tenn.*, 37 F.4th 1182, 1187 (6th Cir. 2022).[2]

But convicted prisoners like Plaintiff do not need to rely on a substantive due process right with regard to medical care. They are entitled to medical care under the Eighth Amendment because a failure to provide such care would be inconsistent with contemporary standards of decency and, thus, would render their punishment cruel and unusual.

[2] The fact that the right to medical care is a substantive due process right, rather than a procedural due process right, reflects the fact that the state cannot avoid the obligation to provide medical care by affording a person the essential guarantees of procedural due process—notice of the intended deprivation and an opportunity to be heard. Thus, Plaintiff could not prevail on a procedural due process claim for failure to provide medical care.

Critically, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 269 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (6th Cir. 1997) ("*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); *Walker v. Norris*, 917 F.2d 1449, 1455 (6th Cir. 1990) (explaining that, "plaintiff's section 1983 claim in a [deliberate indifference] case such as this must be for redress of eighth amendment, not fourteenth amendment substantive due process, rights" (citations omitted)); *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 344 (6th Cir. 2014 ) ("O'Brien's allegations concerned the denial of medical care, thus, '[t]he Eighth Amendment is the primary source of substantive protection' available to him . . . not the more generalized notion of 'substantive due process[.]'"). Because the Eighth Amendment provides an explicit textual source of protection against the alleged deliberate indifference to risks of harm, Plaintiff's due process claim—is properly dismissed.

**C. Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal

protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Although Plaintiff uses the phrase "equal protection" in his complaint, he fails to allege any facts to support his conclusory assertions. Indeed, Plaintiff fails to allege any facts to suggest that he was treated differently than others who were similarly situated. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff has failed to state an equal protection claim on which relief may be granted.

### D. State Law Claim

Plaintiff seeks "relief under state law statute of MSA 4.202(e)(g)." (Compl., ECF No. 1, PageID.8.) The Court has been unable to locate any statute, rule, or regulation with that number that might afford relief based on Plaintiff's factual allegations. Accordingly, Plaintiff has failed to state a state statutory claim on which relief may be granted.

## III. Summary Judgment

### A. Standard

With regard to any claims that remain, Defendants contend they are entitled to summary judgment. Summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288–89 (1961)). "Putting all of that together, Rule 56 asks 'whether the evidence is so one-sided that one party must prevail as a matter of law.'" *DeVooght v. City of Warren, Mich.*, 157 F.4th 893, 899 (6th Cir. 2025) (quoting *Anderson*, 477 U.S. at 252).

Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id*. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021). Nonetheless, a court need not accept bare legal conclusions couched as factual allegations or unwarranted factual inferences in resolving a motion for summary judgment. *See, e.g., Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 969 (6th Cir. 2007) ("Even under the generous standard of review for a grant of summary judgment, we do not 'accept as true legal conclusions or unwarranted factual inferences.'").

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478–79 (citations omitted).

Plaintiff has not responded to the summary judgment motions filed by Defendants Travis and Avery. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such an unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

**B. Exhaustion of Administrative Remedies**

Defendants contend that Plaintiff failed to exhaust his available administrative remedies before filing this action. The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural

rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective September 25, 2023).[3] A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ W. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ W, Y, and CC. The Policy Directive provides the following directions for completing grievance forms:

> The issue should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ Y (emphasis in original). Within five business days after attempting to resolve a grievable issue with appropriate staff, the prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ CC. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II

[3] The Court takes judicial notice of the content of the MDOC policy directive in effect at the time of the events alleged in Plaintiff's complaint. The MDOC's policy directives are a proper subject of judicial notice under Federal Rule of Evidence 201(b). *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("Administrative regulations fall within the category of facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' "); *see also International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) (noting that "a [c]ourt may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority").

Grievance Coordinator. *Id.* at ¶ JJ. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ NN.

Defendants Travis and Avery identify only one grievance that is possibly relevant to Plaintiff's claim: LCF-24-01-0092-12E2 ("92"). (*See* Travis Br., ECF No. 51, PageID.319; Avery Br., ECF No. 54-1, PageID.353–354; Grievance 92, ECF No. 11-1, PageID.75.) This grievance was not directed at any particular individual and involved an incident on January 26, 2024, when plaintiff wanted to be taken to the Emergency Room for "professional help" related to his ankle. Plaintiff filed the grievance on January 28, 2024.

In describing his attempt to resolve the grievance, plaintiff stated,

> Sent a Medical Kite on 1-12-24 & 1-19-24 asking to see Medical Provider. As of Friday the 26th still NO call-out to assist me with my urgent medical need.

(Grievance 92, ECF No. 11-1, PageID.75.) In describing the problem underlying the grievance, plaintiff stated:

> I am in extreme pain and need urgent care. On 12-20-23 while working I step in a hole on yard when walking my dog and believe to have snap my tendons in my foot. Healthcare has only provided ice and x-rays which has not eliminated the pain nor fixed my foot. I am unable to walk on it. Its inhumane to make someone suffer like this. I am requesting to be taken to the Emergency Room for some professional help, I am hurting badly. Please help!

(*Id.*)

"[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued" and that "the grievance is not a summons and complaint that initiates adversarial litigation." *Jones*, 549 U.S. at 219 (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)) (internal quotation marks omitted). For purposes of exhaustion, an MDOC official, employee or medical provider is not alerted to the problem being grieved unless the prisoner complies with the requirements of PD 03.02.130, which

requires the prisoner to list the "[d]ates, times, places and names of all those involved in the issue being grieved." *See Vandiver v. Martin*, 48 Fed. Appx. 517, 519 (6th Cir. 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance").

In response to Defendant Groff's summary judgment motion, Plaintiff argued unsuccessfully that his grievance was adequate because he did not know NP Groff's name, medical staff would not provide him with Groff's name, and the grievance coordinator did not reject the grievance. In his response, plaintiff stated that he "listed the employment position of the person being grieved" and "used the 'Medical provider' as the person being responsible for the long delay in providing treatment." (Plaintiff's Br., ECF No. 42, PageID.278.)[4]

The Step I grievance response summarized the grievance as, "Grievant complaint is not seeing a Medical Provider (MP) timely." (Grievance 92, ECF No. 11-1, PageID.76.) The investigation summary referred to Plaintiff's treatment history since injuring his ankle:

> Upon investigation and review of the Electronic Medical Record (EMR), Grievant sustained an injury on 12/20/2023. The Grievant was seen on 12/20/2023 and 12/27/2023, by nursing [sic] staff in the healthcare clinic. He was seen by the MP on 12/29/2023. The MP ordered Tylenol and Motrin for on[e] month and xrays of

[4] Healthcare treatment protocols are set forth in the MDOC Policy Directive (PD) regarding Health Services, 03.04.100. The version in effect at the time of the events set forth in Plaintiff's complaint became effective on January 9, 2023. The policy directive describes different types of providers. For example, there are qualified health professionals (QHPs): "A Physician, Psychiatrist, Nurse Practitioner, Physician Assistant, Psychologist, Social Worker, Licensed Professional Counselor, Dentist, Registered Dental Hygienist, or Registered Nurse who is licensed and registered/certified by the State of Michigan to practice within the scope of their training." *Id.*, ¶ E. And there are medical providers (MPs): "A qualified health professional who is a Physician, Physician Assistant, or Nurse Practitioner licensed to practice in the State of Michigan." *Id.*, ¶ C. Based upon these classifications, Defendant Groff is an MP; Defendants Travis and Avery, however, are not. They are QHPs. (Travis's Br., ECF No. 51, PageID.318 ("[Defendant Travis] is a Registered Nurse contracted by the MDOC to render medical services and nursing care to inmates such as Plaintiff at the Lakeland Correctional Facility."); (Avery's Br., ECF No. 54, PageID.352 (describing Defendant Avery as "RN Avery").)

> the left ankle. The xrays were reviewed by the MP and showed no evidence of acute fracture. The Grievant sent a healthcare request on 1/12/2024 stating his ankle still hurts. Grievant was seen on 1/15/2024 and 1/18/2024 and 1/30/2024, by nursing staff in the healthcare clinic. A Chart Review was placed to the MP. The Grievant was seen by the MP on 2/1/2024. The MP ordered a MRI to be completed. A 407 was submitted and approved. The MRI has been scheduled.

(*Id*.) The grievance was denied, stating in part that, "Grievant is being evaluated, treated, has had diagnostic testing conducted and is being monitored by the Medical Provider (MP)." (*Id*.)

Here, Plaintiff did not file the grievance against Defendant Travis or Defendant Avery or his "Medical Provider." Rather, plaintiff identified "Healthcare" as the entity being grieved, with the grievance asking someone at Healthcare to take him to the emergency room for "professional help." In the grievance response, the MDOC construed the grievance as complaining that "Healthcare" did not schedule plaintiff to see a medical provider in a timely manner and reviewed his medical record regarding his treatment and requests for treatment. Plaintiff's identification of "Healthcare" as the party grieved is not sufficient to exhaust his claims against QHP Travis or QHP Avery. *See Hill v. Buchanan*, No. 21-1673, 2022 WL 16580149, at *3 (6th Cir. Sept. 8, 2022) (finding that Step I references "only to 'health care' and 'medical' in general" fail to exhaust claims against the unnamed and unidentified defendants); *Bonga v. Abdellatif*, No. 18-2074, 2019 WL 4580389 at *3 (6th Cir. Apr. 26, 2019) (rejecting argument that grievant exhausted claims against unnamed healthcare personnel "by mentioning 'medical providers' in his grievances").[5]

[5] Under certain circumstances, a court has allowed a prisoner to identify a defendant by a title and a description of the defendant's actions rather than by name. *See, e.g., Mattox v. Edelman*, 851 F.3d 583, 597 (6th Cir. 2017) (finding that identifying an "unnamed RMO" (Regional Medical Officer") who denied the grievant medication was sufficient to exhaust claims against that individual, where there were only a few RMOs at the MDOC. That was not case here, where plaintiff grieved "Healthcare".

In summary, plaintiff did not properly exhaust a grievance against Defendants Travis or Avery regarding the matters at issue in this lawsuit. Plaintiff did not: name QHP Travis or QHP Avery as the person being grieved; complain that Travis or Avery failed to adequately treat him when each saw him in December; or complain that Travis falsified medical records. Based on this record, plaintiff's grievance did not alert Defendants Travis or Avery of the claims alleged in this lawsuit. Accordingly, the Court concludes that there are no genuine issues of material fact with regard to whether Plaintiff properly exhausted his administrative remedies before filing suit. He did not; Defendants are entitled to judgment as a matter of law.

## Conclusion

For the reasons stated above, the Court will dismiss Plaintiff's due process, equal protection, and state law claims 28 U.S.C. § 1915(e)(2), for failure to state a claim on which relief may be granted. Additionally, the Court will grant Defendants' motions for summary judgment. The Court will enter an order and judgment consistent with this opinion.

Dated: October 9, 2026

/s/ Ray Kent
Ray Kent
United States Magistrate Judge